## EXHIBIT A

State of Illinois          )
                           ) ss
County of St. Clair        )

## UNSWORN DECLARATION UNDER PENALTY OF PERJURY
## IN SUPPORT OF COMPLAINT FOR FORFEITURE

I, Derek Parker, do hereby depose and declare under penalty of perjury the following:

At all times relevant herein, I have been a Task Force Officer with the Drug Enforcement Administration.   The contents of this Declaration are based on information provided to me during the course of my investigation from participants in the criminal activity, from other witnesses, and from other law enforcement officers.

1.     Since January 2013, a DEA Confidential Source, hereinafter referred to as CS, has provided information concerning the narcotic related activities of Steven SCHAUF Jr. of Carbondale, Illinois.   According to the CS, he/she is aware that for the past several years, SCHAUF Jr. has obtained multiple pounds of high-grade and hundred pound quantities of regular-grade marijuana on a monthly basis.   The CS stated he/she is aware SCHAUF Jr. lives in Carbondale, Illinois, but travels around Southern Illinois to meet with his distributors and/or couriers.   SCHAUF Jr. told the CS he has been receiving large shipments of marijuana from California on a weekly basis.   SCHAUF Jr. told the CS the shipments are anywhere between 50 and 100 pounds at a time.   Based upon previous communications, SCHAUF Jr. told the CS he received his last shipment around May 10, 2014, but did not specify an amount.

2.     Since May 2013, the CS has conducted three separate controlled drug purchases of two (2) pounds of marijuana for from Steven SCHAUF Jr. in Carbondale, Illinois.   During the first

transaction, agents identified a "stash house" for SCHAUF Jr. located in Carbondale, Illinois. Based upon information gathered from physical surveillance, agents located SCHAUF Jr. at the "stash house" immediately before and after the controlled drug purchase.   During the second transaction, the CS purchased the marijuana directly from SCHAUF Jr. at his previous apartment located in Carbondale, Illinois.   Also, during that transaction the CS provided SCHAUF Jr. with a Royal Sovereign Money Counter, which SCHAUF Jr. told the CS he still uses.

3.      From April 2013 – October 2013, agents with the DEA Fairview Heights Residence Office (DEA Fairview Heights RO) conducted several Title-III wire intercepts on Steven SCHAUF Jr. and one of his sources of supplies in Florida.   During these wiretaps, SCHAUF Jr. made arrangements for several shipments of large quantities of marijuana and ecstasy to the Southern District of Illinois, particularly in the Carbondale, Illinois area.   SCHAUF Jr. had multiple sources of supplies for marijuana and multiple telephones.   Agents were unable to intercept a shipment of marijuana during the wiretaps, but did hear SCHAUF Jr. discuss marijuana distribution on a daily basis.   He did mention on several occasions about how he counts money (drug proceeds) at this residence and would distribute pound quantities of marijuana from his residences.

4.      On May 13, 2014, at approximately 12:30 p.m., agents with the DEA Fairview Heights RO met with a DEA Confidential Source, to formulate a plan to purchase two pounds of marijuana for $2,000 from Steven SCHAUF Jr. at his current residence in Carbondale, Illinois.

5.      At approximately 12:45 p.m., agents established surveillance in the area of SCHAUF Jr.'s residence and awaited the arrival of the CS.   Agents maintained surveillance on the CS prior to and after the transaction.   While in route to SCHAUF Jr.'s residence, the CS contacted SCHAUF Jr. to verify his address.   According to the CS, SCHAUF Jr. directed him/her to drive

2

down West Sunset and look for him waiting outside in front of the building.   The CS advised he observed SCHAUF Jr. in front of an apartment in Carbondale, Illinois and the CS parked his/her vehicle in the rear of the building and met SCHAUF Jr. at the back door.   Agents did observe the CS exit his/her vehicle and walk to the apartment.   The agents view was partially obstructed and they did not observe SCHAUF Jr. at the door.

6.      The CS advised the apartment has two levels with the back door leading to the kitchen and the living room in front.   The CS stated once he/she entered the residence, SCHAUF Jr. immediately went upstairs and retrieved one pound of marijuana that was vacuum sealed in a plastic bag.   SCHAUF Jr. asked the CS how many he/she wanted and the CS said two.   SCHAUF Jr. walked to the kitchen and opened up the bag with a pair of scissors to show the CS the quality of the marijuana.   SCHAUF Jr. then re-sealed the plastic bag with a black food-saver type vacuum sealing machine located on his kitchen counter.

7.      SCHAUF Jr. then returned upstairs and retrieved an additional vacuum sealed plastic bag of approximately one pound of marijuana.   Again, SCHAUF Jr. met the CS back in the kitchen and opened the second bag with a pair of scissors.   The CS did tell SCHAUF Jr. that he/she didn't need to open up the second bag, but SCHAUF Jr. told the CS he had to open it because he has "different ones" and wanted to "check it out."   SCHAUF Jr. told the CS he didn't know if it was the same as the first one.   Once SCHAUF Jr. opened up the bag and smelled the marijuana he told the CS "this one is the same."   SCHAUF Jr. and the CS discussed the quality of the marijuana and SCHAUF Jr. told the CS, "once you open it up its like popcorn."   SCHAUF Jr. then re-sealed the bag with the vacuum sealing machine located on the kitchen counter and handed both bags to the CS.   The CS provided SCHAUF Jr. with $2,000.00 of DEA Official Advanced Funds and

3

SCHAUF Jr. counted the money at the kitchen table.

8.     The CS and SCHAUF Jr. continued to discuss future drug purchases including marijuana and cocaine.   The two discussed SCHAUF Jr.'s source of supply in California. SCHAUF Jr. told the CS the price of a whole kilogram of cocaine was around $32,000.00 to $34,000.00.   SCHAUF Jr. also told the CS that he was going to fly to California on Friday to meet with his source about "hand picking" his next marijuana shipment.   The CS asked SCHAUF Jr. how he gets his money out to California and SCHAUF Jr. replied, "I put half in my bank account and I just take the other.   But I spend like 20 or 30."   The CS interpreted the "20 or 30" to mean at least $20,000.00 - $30,000.00 each shipment.

9.     During the meeting, SCHAUF Jr. did show the CS a photograph on his telephone of additional marijuana that he had available.   SCHAUF Jr. did tell the CS it was better quality than the marijuana the CS purchased.   SCHAUF Jr. only showed the CS a picture of the marijuana, but did not elaborate where the marijuana was being stored.

10.     On May 14, 2014, agents conducted surveillance on SCAHAUF Jr.   The surveillance of SCHAUF Jr. eventually led to a traffic stop on SHAUF, Jr. after he departed his apartment alone.   The traffic stop took place on Illinois Route at North Lark Lane in Carbondale, Illinois.   SHAUF, Jr. was alone and was operating a 2010 Chrysler 300, bearing VIN: 2C3CA4CD6AH101674.   The traffic stop further resulting in SCHAUF Jr.'s arrest for his involvement in a Conspiracy to Possess with Intent to Distribute Marijuana in the Southern District of Illinois.

11.     After SCHAUF Jr.'s arrest, he waived his Miranda rights and was interviewed by DEA Agents.   During the interview, SCHAUF Jr. told agents that over the last year or two, he has

been receiving 10 to 20 pounds of marijuana approximately every month, or every other month. SCHAUF Jr. estimated that over the last year he has probably received 100 pounds of marijuana. SCHAUF Jr. told agents that he pays $800 per pound, and then sells it for $1,000 per pound, netting a $200 per pound profit.  Also, during the search of SCHAUF Jr. agents recovered the $2,000.00 of DEA Official Advanced Funds used during the purchase of two pounds of marijuana on May 13, 2014.  SCHAUF Jr. did tell agents he was on his way to Regions Bank to deposit the money in his account so he could pay an investor in Florida for previous entertainment shows.  Based upon SCHAUF Jr.'s own admissions the money obtained from the sale of marijuana is being deposited in his Regions bank account.

12.     In addition to selling marijuana, SCHAUF Jr. told agents that he throws shows under his business called I.M.P.R.E.S.S. Promotions.  According to the Florida Secretary of State, I.M.P.R.E.S.S. Promotions is a Florida Limited Liability Company formed in August of 2009, with SCHAUF Jr. listed as the CEO and Herman Williams listed at the CFO.  SCHAUF Jr. stated that he receives investments from investors in order to pay for his shows.  SCHAUF Jr. stated that most of the money received from the shows is used to pay back his investors, primarily Herman Williams. SCHAUF Jr. stated that when he loses money on shows, which is common, he has to pay back his investors with proceeds he makes from selling marijuana.

13.     SCHAUF Jr. told agents that he made approximately $10,000 in income in 2012 and 2013.  SCHAUF Jr. stated that he has already made approximately $25,000 in income the first five months of 2014 because he was doing "shows" in Florida.   SCHAUF Jr. stated that the majority of the $25,000 he made so far in 2014 went to pay back his investors.

14.     According to records provided by the Internal Revenue Service in response to an ex-parte order for tax records from the United States District Court in the Southern District of Illinois, SCHAUF Jr. has not filed a U.S. Federal Tax Return for tax years 2009 through 2011. SCHAUF Jr. did file a 2012 U.S. Federal Tax Return, in which he claimed total income of $9,965. The $9,965 was reported on line 7 of the federal return (Wages, salaries, tips, etc.).   The investigative team is currently still waiting for the Internal Revenue Service to provide SCHAUF Jr.'s 2013 tax records.

15.     SCHAUF Jr. opened a checking account (Account No. xxxxxx9226) at Regions bank on January 26, 2011.  According to the deposit analysis conducted by IRS Special Agent Jason Bamvakais, total deposits into the account for 2011 was $26,925.54, of which, approximately 90% ($24,161.66) was cash.   Total deposits into the account for 2012 was $82,754.11, of which, approximately 88% ($73,137.95) was cash deposits.  Total deposits into the account for 2013 were $65,628.20, of which 75% ($49,399.11) was cash deposits.  Total Deposits for January 2014 through May 2014 was $44,301.48, of which 89% ($39,629) was cash deposits.

16.     SCHAUF Jr. told agents that most of the money he makes from selling marijuana is deposited into his Regions Bank Account.  Over the last year, SCHAUF Jr. estimated that he deposited approximately $20,000 to $30,000 in drugs proceeds into his Regions bank account. SCHAUF Jr. stated he puts the drug proceeds into his account in order for him to pay normal living expenses, and to wire transfer money to his source of supply when they do not pick up the money in person.  SCHAUF Jr. stated that the account is co-mingled with legitimate money he makes from "throwing shows".  SCHAUF Jr. told agents that the "majority" of the deposits into his account are from the sale of marijuana.  However, SCHAUF Jr. claims that the last approximate $10,000 in

cash deposits made into the account in May of 2014 was legitimate proceeds from shows he threw in Florida back in March of 2014, that he kept on him until recently depositing in May.

17.     Based on the foregoing, declarant believes that the subject-matter 2010 Chrysler 300, bearing VIN: 2C3CA4CD6AH101674, with all accessories, attachments and components thereon is property which constitutes a conveyance which was used or intended to be used, to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of a controlled substance.

18.     Based on the foregoing, declarant further believes that the subject-matter $6,767.34 in United States Currency seized from Regions Bank Checking Account No. xxxxxx9226 is property which constitutes money furnished or intended to be furnished by a person in exchange for a controlled substance, or proceeds traceable to such an exchange, or money used to facilitate a violation of 21 U.S.C. § 801 *et seq.*

Executed on this __17__ day of September, 2014.

DEREK PARKER
Task Force Officer
Drug Enforcement Administration

7